IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Liberty Mutual Fire Insurance Company, | ) ) ) | |
| Plaintiff/Counter Defendant, | ) ) | C/A No. 7:12-2824-TMC |
| v. | ) ) ) | **OPINION & ORDER** |
| J M Smith Corporation, Smith Drug Company, Inc., | ) ) ) | |
| Defendants/Counter Plaintiffs. | ) ) ) | |

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff/Counter Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") and Defendants/Counter Plaintiffs J M Smith Corporation and Smith Drug Company (collectively "J M Smith"). (ECF Nos. 27 and 37). A hearing was held on the matter on May 9, 2013, and the court took the motion under advisement. For the reasons set forth below, Liberty Mutual's Summary Judgment Motion is denied and J M Smith's Summary Motion is granted.

**I. Background/Procedural History**

J M Smith is a pharmaceutical drug distributor incorporated in South Carolina. Beginning in late 2011, J M Smith distributed medications to three pharmacies in West Virginia. In June 2012, the West Virginia Attorney General Darrell V. McGraw, Jr., ("AG") sued J M Smith and twelve other drug distribution companies alleging that between 2000 and 2011 the companies had illegally distributed controlled substances by distributing drug quantities in excess of legitimate medical need.[1] In this complaint ("Underlying Complaint"), the AG alleges that these

---

[1]The Underlying Complaint names as defendant J M Smith Corporation d/b/a Smith Drug Company. (ECF No. 1-14 - Underlying Compl. ¶ 8).

companies created "pill mills" in West Virginia and the drug distributors are liable for the harms caused to the state.

In the Underlying Complaint, the AG alleges the companies were on notice of the growing epidemic of drug abuse from the drugs which they supplied, but that they inserted themselves as an integral part of a pill mill process. (ECF No. 1-14 - Underlying Compl. ¶¶ 2, 4). The Underlying Complaint alleges claims for violations of the West Virginia Uniform Controlled Substances Act, W.Va. Code § 60A-3-301; violations of the West Virginia Consumer Credit and Protection Act, W.Va. Code § 46A-5-101; public nuisance; unjust enrichment; negligence; and violations of the West Virginia Antitrust Act, W.Va. Code § 47-18-4. *Id.* The complaint seeks injunctive relief and damages.

Between 2000 and 2011, J M Smith purchased commercial general liability insurance policies through Liberty Mutual ("Policies"). J M Smith sought coverage from Liberty Mutual under the Policies. In this action, Liberty Mutual seeks a declaratory judgment finding it has no duty to defend or indemnify J M Smith.[2] Liberty Mutual has filed a motion for summary judgment on its declaratory claim and on J M Smith's counterclaims for declaratory judgment and breach of contract. J M Smith has filed a cross-motion for summary judgment on the duty to defend claim.

## II. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor.

---

[2]Liberty Mutual has funded the defense reserving its rights, pending resolution of this declaratory judgment action regarding its duty to defend and indemnify.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

### III. Discussion

The pivotal issue is whether the Underlying Complaint alleges a covered occurrence. Liberty Mutual contends that the Underlying Complaint alleges facts that support only knowing misconduct and, even if the Underlying Complaint could be read to allege that the distributors negligently contributed to drug abuse in West Virginia, not all negligently caused harm is accidental and considered an occurrence. J M Smith contends that the Underlying Complaint sounds in negligence and alleges a classic occurrence. J M Smith alleges it "accidentally" funneled massive quantities of controlled substances into West Virginia.

In the Underlying Complaint, the AG alleges that "[t]hrough their acts and omissions these [d]efendants have inserted themselves as an integral part of the pill mill" with each defendant "knowingly or while acting grossly negligent prescribe, dispense or distribute prescription medicine for illegitimate medical purposes." (Underlying Compl. ¶ 4). The AG alleges that the "[d]efendants have acted negligently, recklessly and at times illegally all in contravention of West Virginia law." (Underlying Compl. ¶ 5).

There are eight causes of action alleged in the Underlying Complaint. In Count One, the AG seeks injunctive relief and alleges violations of the West Virginia Uniform Controlled

3

Substances Act, W.Va. Code § 60A-3-301.  The AG alleges the defendants "failed to diligently respond to suspicious orders which the [d]efendants have filled" and failed to provide effective controls and procedures to guard against diversion of controlled substances in contravention of West Virginia law." (Underlying Compl. ¶ 16).  The AG further alleges that by failing to do so, the defendants "willfully and repeatedly violated the Uniform Controlled Substances Act and corresponding regulations.  (*Id.* ¶ 17).

In Count Two, the AG seeks "Damages Resulting From Negligence and Violations of the West Virginia Uniform Controlled Substances Act." by the defendants for "their negligence and by their reckless disregard of the customs, standards and practices within Defendants' own industry." (Underlying Compl. at 10-11). Specifically, the AG alleges: improper dispensing of prescriptions; engaging in prohibited acts; deceiving and attempting to deceive medical practitioners; disregarding the requirements of the Wholesale Drug Distribution Licensing Act of 1991; and conspiring to violate the West Virginia Controlled Substances Act.  (Underlying Compl. ¶ 24).  The AG alleges the "[d]efendants have willfully turned a blind eye towards the actual facts by regularly distributing large quantities of controlled substances to customers" and "negligently acted with others to violate West Virginia's drug laws. . . ." (*Id.* at ¶ 28).

In Count Three, the AG alleges the defendants violated the West Virginia Consumer Credit and Protection Act and engaged in unfair or deceptive acts or practice in the conduct of trade or commerce and these acts were willful.  (Underlying Compl. at 12-13; ¶ 36.)

In Count Four, the AG alleges the defendants have created a public nuisance by engaging in a pattern of distributing controlled substances well-known to be abused "in such quantities and with such frequency that the defendants knew or should have known that these substances were not being prescribed and consumed for legitimate medical purposes." (Underlying Compl. ¶ 42).  As a result of this conduct, the AG alleges "the [d]efendants negligently, recklessly and/or

4

intentionally, and acting with blind indifference to the facts, created and continued a public nuisance." (*Id*. ¶ 45).

In Count Five, the AG alleges a claim of unjust enrichment. Specifically, the AG alleges the "[d]efendants have been unjustly enriched by neglecting its duty of distributing drugs only for medical purposes " (Underlying Compl. ¶ 49).

In Count Six, the AG alleges a negligence claim. (Underlying Compl. at 17-18). The AG alleges the "[d]efendants have a duty to exercise reasonable care in the marketing, promotion and distribution of controlled substances" and the defendants have breached this duty. (*Id*. ¶¶ 52-53). Further, the AG alleges "[t]he [d]efendants were negligent in failing to guard against third-party misconduct, i.e. the conduct of the so-called 'pill-mill' physicians and staff as well as corrupt pharmacists and staff and, in fact, by their actions the [d]efendants participated in such misconduct." (*Id*. ¶ 55). The AG also alleges "[t]he [d]efendants are negligent in not acquiring and utilizing special knowledge and special skills that relate to the dangerous activity in order to prevent and/or ameliorate such distinctive and significant dangers." (*Id*. ¶ 58). Finally, the AG alleges that the defendants breached their duty to handle controlled substances with the proper degree of care, prudence, watchfulness, and vigilance. (*Id*. ¶ 59).

In Count Seven, the AG seeks a court-approved medical monitoring program for prescription drug users in West Virginia to aid in diagnosis, treatment, and research. (Underlying Compl. at 19-20).

In Count Eight, the AG alleges violations of the West Virginia Antitrust Act through the defendants conspiring with pill-mill physicians and pharmacists to restrain and monopolize trade resulting in an anti-trust competitive effect on trade. (Underlying Compl. at 20-21).

In his prayer for relief, the AG seeks temporary and permanent injunctive relief, damages, costs, attorneys' fees, and medical monitoring. (Underlying Compl. at 22-23).

Specifically, the AG seeks "losses sustained as the proximate result of both negligent and conscious violations of the West Virginia Uniform Controlled Substances Act and regulations" and "[d]amages and losses sustained as the proximate result of the [d]efendants' negligence in marketing, promoting and distribution of controlled substances in West Virginia." (Underlying Compl. at 22).

The Policies provide Liberty Mutual "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (ECF No. 1-12 at 24).[3] Further, the Policies provide that Liberty Mutual has "the right and duty to defend the insured against any 'suit' seeking those damages." *Id.* "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (ECF No. 1-12 at 36). "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 37.[4]

The Policies do not define accident. "[I]n the absence of a prescribed definition in the policy, the definition of 'accident' is '[a]n unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt.'" *Auto Owners Ins. Co., Inc. v. Newman*, 684 S.E.2d 541, 543 (S.C. 2009).

---

[3] Because the pharmaceutical distributions alleged in the Underlying Complaint began in 2011, the court cites to the 2010-11 policy. The other policies contain substantially the same language. (See ECF No. 1-1 through 1-11 and 1-13).

[4] Additionally, the Policies contain the following exclusion: "This insurance does not apply to: a. Expected or Intended Injury [-] 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." *Id.* at 25. However, whether this exclusion applies is not properly before the court as Liberty Mutual specifically notes that its motion for summary judgement is not premised on this exclusion. (ECF No. 38 at 8).

Under South Carolina law, questions of coverage and the duty to defend under an insurance policy generally "are determined by the allegations of the complaint. If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." *City of Hartsville v. South Carolina Mun. Ins. & Risk Fin. Fund*, 677 S.E.2d 574, 578 (S.C. 2009) (citation omitted); *Collins Holding Corp. v. Wausau Underwriters Ins. Co.,* 666 S.E.2d 897, 899 (S.C. 2008)(holding "[i]f the facts alleged in the complaint fail to bring a claim within the policy's coverage, the insurer has no duty to defend.")(citing *S.C. Med. Malpractice Liab. Ins. Joint Underwriting Assn. v. Ferry*, 354 S.E.2d 378, 380 (S.C. 1987); *Mfrs. & Merchants Mut. Ins. Co. v. Harvey*, 498 S.E.2d 222, 227 (S.C. Ct.App. 1998)(In South Carolina, whether an insurance company has a duty to defend and indemnify is determined by the allegations in the complaint).[5] "Furthermore, when construing an insurance policy under South Carolina law, the court construes 'clauses of inclusion' broadly, and 'clauses of exclusion' narrowly." *State Auto Prop. & Cas. Ins. Co. v. Howard*, 2013 WL 227769 *2 (D.S.C. 2013) (citing *McPherson v. Mich. Mut. Ins. Co.*, 426 S.E.2d 770, 771 (S.C. 1993)).

While the allegations in the underlying complaint are key to a court's analysis, the determination of the existence of a duty to defend is "not strictly controlled by [those] allegations," but "may also be determined by facts outside of the complaint that are known by the insurer." *USAA Prop. & Cas. Ins. Co. v. Clegg*, 661 S.E.2d 791, 798 (S.C. 2008). Moreover, "[i]n examining the complaint, a court must look beyond the labels describing the acts to the acts

---

[5]Both parties are apparently in agreement that South Carolina law governs the interpretation of the policies as they each cite South Carolina law as Liberty Mutual explicitly states this (ECF No. 27 at 13-15) and J M Smith does not object and further cites to South Carolina law (*See, e.g.,* ECF No. 36 at 14). The court agrees. Because this case is one brought pursuant to diversity jurisdiction, the court must apply the law of the forum state, South Carolina. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). And S.C. Code Ann. §38-61-10 requires the application of South Carolina law. *See Hartsock v. Am. Auto Ins. Co.*, 788 F.Supp.2d 447 (D.S.C. 2011)(discussing application of South Carolina law in diversity action involving insurance contract).

themselves which form the basis of the claim against the insurer." *Collins Holding Corp.*, 666 S.E.2d at 899.  Put differently, "[a]lthough a determination of an insurer's duty to defend is dependent upon the insured's complaint, an analysis of this duty involves the allegations of the complaint and not the specifically identified causes of action." *Graphic Arts Mut. Ins. Co. v. Caldwell Chevrolet, Inc.*, No. 0:11-CV-01255, 2012 WL 3962752, at *4 (D.S.C. Sept. 11, 2012). Furthermore, "[u]nder South Carolina law, an insurer's duty to defend is triggered if *any* cause of action in a complaint seeks damages covered by the policy." *Liberty Mut. Fire Ins. Co. v. J.T. Walker Ind., Inc.*, C.A. No. 2:08-2043-MBS, 2012 WL 3292973 at *16 (D.S.C. August 10, 2012)(emphasis in original)(*citing Town of Duncan v. State Budget & Control Bd.*, 482 S.E.2d 768 (S.C. 1997).

Liberty Mutual contends that the Underlying Complaint does not allege a covered occurrence for two reasons.  First, Liberty Mutual contends that the Underlying Complaint alleges facts which support only knowing misconduct.  The court disagrees.

Here, the Underlying Complaint contains specific allegations of negligence.  For example, Count Two specifically alleges "the [d]efendants negligently acted with others to violate West Virginia's drug laws . . . ."  Looking beyond the labels, however, the court is to focus on the allegations in the Underlying Complaint.  While the Underlying Complaint alleges J M Smith "willfully and repeatedly" violated West Virginia law, it also alleges that J M Smith should have been aware of suspicious or unusually large orders to pharmacies and should have recognized that the controlled substances were being dispensed for non-legitimate medical purposes.  (Underlying Compl. ¶ 42).

Liberty Mutual then contends that, even assuming the Underlying Complaint could be read to allege that the distributors negligently contributed to the drug abuse in West Virginia, it does not allege an occurrence because harm caused by an insured's intentional acts is not

8

accidental if it is a natural and probable consequence of those acts.  Liberty Mutual argues that J M Smith knew that its actions would result in harm and the Underlying Complaint does not allege any unforeseen or unexpected event that occurred by chance.  J M Smith contends that it "did not intend, nor could it reasonably anticipate that, a criminal collaboration among complicit pharmacies, physicians and patients would produce the 'effect' - the addiction and additional medical injuries of patients who procured illegal prescriptions."  (ECF No. 37-1 at 15).

Liberty Mutual cites *C.Y. Thomason Co. v. Lumbermens Mut. Cas. Co.*, 183 F.2d 729, (4th Cir. 1950) (finding no coverage for negligent excavation of a ditch resulting in flooding and debris build-up in garage or for creating bump which damaged cars entering garage), for support.  In *C.Y. Thomason Co.*, the Fourth Circuit, construing South Carolina law, held "neither the means nor the result was accidental, [when] the acts which caused the damages were persistently and continuously done and the results were normal consequences of the acts."  *Id.* at 732-33.  However, the results in this case, creating a pill mill with widespread addiction, cannot be said to be a *normal* consequence of distributing prescription drugs to three pharmacies in a state over a limited time.

Liberty Mutual also cites *Collins Holding Corp. v. Wausau Underwriters Ins. Co.*, 666 S.E.2d 897 (S.C. 2008), for the proposition that an occurrence does not include allegations of knowing misconduct.  In *Collins*, the owner, operator, and distributor of amusement and gambling machines sought coverage under its commercial general liability policy for an action brought based upon losses caused by Collins' gambling machines, which at that time were legal. In the underlying complaint, there were allegations that Collins "systematically violated South Carolina laws specifically enacted to protect the public from excessive gambling losses."  *Id.* at 899.   Further, the underlying complaint alleged Collins exceeded the maximum daily payout limit and engaged in advertising leading the plaintiffs to believe they could win more than the

9

maximum $125.00 daily pay out. The South Carolina Supreme Court held there was no occurrence because the underlying complaint alleged intentional, deliberate, and illegal acts committed "with the purpose of addicting patrons to gambling machines." *Id*. at 900.

Unlike in *Collins*, where the allegations were that Collins intentionally paid and advertised an *illegal* payout, here, the Underlying Complaint alleges J M Smith could have violated West Virginia laws though a failure to adequately monitor the quantity of drugs and respond to suspicious orders that it distributed in West Virginia. (Underlying Compl. ¶¶ 16, 42, 45). In *Collins*, the underlying complaint alleged acts which were intentional and illegal. Here, the acts alleged in the Underlying Complaint are arguably based upon intentional acts which resulted in violations of West Virginia law. However, the conduct of distributing prescription drugs based upon orders placed by pharmacies is not, in and of itself, illegal and the violation of laws cannot be reasonably anticipated - especially as to J M Smith, which had been distributing prescription drugs in West Virginia for only a short time and to only three pharmacies.

The court finds the Underlying Complaint alleges an occurrence and Liberty Mutual has a duty to defend. Accordingly, Liberty Mutual's summary judgment motion on the duty to defend is denied. J M Smith contends that if the court denies Liberty Mutual's summary judgment motion on the duty to defend claim, it must also deny Liberty Mutual summary judgment motion on the duty to indemnify. (ECF No. 37-1 at 7 n.3). The court agrees. Under South Carolina law, a liability insurer's duty to indemnify is determined by the findings of the fact finder in the underlying case. *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388–89 (4th Cir. 2001) (*citing Jourdan v. Boggs/Vaughn Contracting, Inc.*, 476 S.E.2d 708, 711 (S.C. Ct.App. 1996)). In other words, "[t]here is no obligation to defend until an action is brought and no obligation to indemnify until a judgment against the insured is obtained." *See Howard v. Allen*, 176 S.E.2d 127, 129 (S.C. 1970). Accordingly, the court also denies Liberty

Mutual summary judgment on its duty to indemnify claim and on J M Smith's breach of contract claim.

## Conclusion

For the foregoing reasons, Plaintiff/Counter Defendant Liberty Mutual's Motion for Summary Judgment (ECF No. 27) is **DENIED** and Defendants/Counter Plaintiffs J M Smith's Motion for Summary Judgment on the duty to defend (ECF No. 37) is **GRANTED**.

**IT IS SO ORDERED.**

                                                              s/Timothy M. Cain
                                                              United States District Judge

Anderson, South Carolina
September 24, 2013